[No. H010888. Sixth Dist. June 14, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MONICA LISA MEDEIROS, Defendant and Appellant.

**COUNSEL**

Susan K. Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald Engler and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COTTLE, P. J.—Defendant Monica Lisa Medeiros appeals from an order imposing a second term of probation because she was unable to fully pay restitution during the original maximum term of probation. For the reasons stated below, we shall reverse the order reinstating probation.

*Factual and Procedural Background*

Between November 1985 and June 1986, defendant took 13 blank checks from her employer and forged his signature. She and her codefendants split the proceeds: $6,133.35 to defendant, $80 to her sister Tina and $3,435.57 to one of defendant's coworkers. On May 21, 1987, defendant pleaded no contest to two counts of forgery (§ 470[1]) and one count of grand theft (§§ 484, 487). On July 31, 1987, the court suspended imposition of sentence and placed defendant on probation for three years. As one of the conditions of her probation, defendant was ordered to pay the victim restitution in the amount of $6,133.35.

On July 26, 1990, just before probation expired, the court summarily revoked probation. The probation department reported that defendant had not made regular restitution payments, but had paid when she could. Her remaining restitution balance was $5,974.77. She was willing to make minimum payments of $240 monthly if probation was extended two years. On August 30, 1990, the court reinstated probation and modified it by extending probation until October 31, 1992. Defendant was ordered to pay $240 monthly restitution.

On October 22, 1992, just before the extended probationary period expired, the court again summarily revoked probation. The probation department reported that defendant had a remaining restitution balance of $4,238.50. She had worked occasionally but had been denied employment due to her felony conviction. She is the sole support for a 10-year-old daughter.

The probation department recommended reinstating, then terminating probation and canceling the restitution balance. The prosecutor argued that the court could reinstate and extend probation for a new term, up to five years, to allow defendant to pay the restitution balance. Defendant contended that the court lacked jurisdiction to extend probation. On January 22, 1993, the court determined that defendant was not in violation of her probation but reinstated probation and extended it to expire in another five

---

[1]All statutory references are to the Penal Code unless otherwise specified.

years. As a condition of this second maximum term of probation, defendant was ordered to pay $85 a month.

## Discussion

Our analysis begins with *People* v. *Cookson* (1991) 54 Cal.3d 1091 [2 Cal.Rptr.2d 176, 820 P.2d 278], which authorized extending probation to the maximum period due to inability to fully pay restitution. *Cookson* explained that the power to modify probation conferred by section 1203.3[2] "includes the power to extend the probationary term. (*Ex Parte Sizelove* (1910) 158 Cal. 493, 494 [111 P.2d 527].)" (54 Cal.3d at p. 1095.) *Cookson* held that the power to modify probation does not depend on finding a probation violation. (*Id.* at pp. 1098-1100.)[3] What is required to justify modification is a "change in circumstances . . . . As [the Supreme Court] held in *In re Clark* (1959) 51 Cal.2d 838 [337 P.2d 67], 'An order modifying the terms of probation *based upon the same facts* as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it.' (*Id.* at p. 840, italics added.)" (54 Cal.3d at p. 1095.) It could be a changed circumstance if, after restitution had been set consistent with the probationer's ability to pay, the probationer was nevertheless unable to pay full restitution within the initial term of probation. (*Ibid.*)

In holding that probation could be modified and extended due to the probationer's inability to pay full restitution, *Cookson* recognized that part of section 1203.2, subdivision (a), limits revoking probation for nonpayment of restitution. (54 Cal.3d 1091, 1095.) The statute provides: "However, probation shall not be revoked for failure of a person to make restitution pursuant to Section 1203.04 as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay. Restitution shall be consistent with a person's ability to pay." *Cookson* interpreted this passage, added in 1984 (Stats. 1983, ch. 568, § 2.5, p. 2435), as intended to codify the holding in *Bearden* v. *Georgia* (1982) 461 U.S. 660

---

[2]Section 1203.3 currently provides in pertinent part: "(a) The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held. [¶] (b) . . . [¶] (3) In all cases, if the court has not seen fit to revoke the order of probation and impose sentence or pronounce judgment, the defendant shall at the end of the term of probation or any extension thereof, be by the court discharged . . . ."

[3]In holding that probation can be modified absent a violation, the *Cookson* court noted that although section 1203.1 permitted modification "should the probationer violate any of the terms or conditions imposed by the court in the matter," other sections, including sections 1203.3 and 1203.2, subdivision (b), did not impose this requirement.

[76 L.Ed.2d 221, 103 S.Ct. 2064], that a probationer cannot be imprisoned upon revocation of probation for failure to pay restitution unless the probationer was able to pay and willfully refused. (54 Cal.3d at pp. 1096-1097.) *Cookson* held that this limitation "does not prohibit a court from extending a term of probation when the probationer fails to pay restitution as ordered because of an inability to pay." (*Id.* at p. 1097.)

■ We find particularly pertinent the following footnote from *Cookson*: "Because the maximum term of incarceration that defendant could have suffered was less than five years (§ 484b), probation could not extend past five years (§ 1203.1)." (54 Cal.3d 1091, 1094, fn. 2; see *People* v. *Hodgkin* (1987) 194 Cal.App.3d 795, 805, fn. 3 [239 Cal.Rptr. 831]; *In re Daoud* (1976) 16 Cal.3d 879, 884 [129 Cal.Rptr. 673, 549 P.2d 145]; *In re Dupper* (1976) 57 Cal.App.3d 118, 122-123 [128 Cal.Rptr. 898].) In *Cookson*, the trial court had extended the original three-year probation by an additional two years to a five-year term (54 Cal.3d at p. 1094), and *Cookson* agreed that a two-year extension was the maximum extension permissible in that case. (54 Cal.3d at p. 1094, fn. 2.)

The result in *Cookson* was grounded in part on two provisions in section 1203.1, subdivision (a), which discuss the maximum period of probation. The first provision provides that "[t]he court, or judge thereof, in the order granting probation, may suspend the imposing, or the execution, of the sentence and may direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence, except as hereinafter set forth, and upon those terms and conditions as it shall determine." The second provides: "However, where the maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years."

Here, it is undisputed that defendant's maximum probationary period under section 1203.1, subdivision (a), is five years. Applying *Cookson*'s interpretation of the statutes it considered, it seems clear the trial court could not extend defendant's probation beyond five years.

The trial court, however, relied on a statutory provision not mentioned in *Cookson*, namely section 1203.2, subdivision (e), as conferring authority to reinstate defendant's probation for a second maximum term. That subdivision provides: "If probation has been revoked before the judgment has been pronounced, the order revoking probation may be set aside for good cause upon motion made before pronouncement of judgment. If probation has been revoked after the judgment has been pronounced, the judgment and the order

which revoked the probation may be set aside for good cause within 30 days after the court has notice that the execution of the sentence has commenced. If an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period, the court may again place the person on probation for that period and with those terms and conditions as it could have done immediately following conviction."

The historical context of this subdivision clarifies its meaning. This language was added to the statute in 1957 in response to *People* v. *Brown* (1952) 111 Cal.App.2d 406 [244 P.2d 702].[4] (*People* v. *Gish* (1964) 230 Cal.App.2d 544, 546 [41 Cal.Rptr. 155]; cf. *In re Hamm* (1982) 133 Cal.App.3d 60, 64 [183 Cal.Rptr. 626].) *Brown* identified a defect in the then existing statutory scheme for probation. According to *Brown*, once a court timely revoked probation and the probationary period expired, the court lacked authority to set aside its revocation and extend the probationary period. All the court could do under those circumstances was pronounce judgment. (111 Cal.App.2d 406, 408.) *Brown* asked the Legislature to remedy the situation in order to avoid imprisoning probationers whose only dereliction in a life of exemplary conduct was a brief failure to report to the probation officer. (*Id.* at pp. 408-409.) The court asserted, "Jurisdiction to pronounce judgment or impose sentence, and to retain the probationary status, should be coextensive as to time." (*Id.* at pp. 409.)

*People* v. *Carter* (1965) 233 Cal.App.2d 260, 267-268 [43 Cal.Rptr. 440], explained: "The purpose of the amendment (Pen. Code, § 1203.2) was to liberalize the rule and permit the court not only to retain the right to impose sentence at a subsequent time, but also to extend the original term of probation to the maximum time for which it could have been originally fixed in lieu of sentencing or, as an alternative, to grant a completely new term of probation without reference to the length of the original term or time served under it. As would the original, the period of the new term would be limited in time only by the length of the maximum period for which the defendant could be sentenced for the original offense."

Cases have relied on the 1957 enactment to authorize reimposing probation beyond the initial maximum term when probation was timely revoked,

---

[4]In 1957 the following language was added to section 1203.2: "If probation has been revoked either before or after judgment has been pronounced, the order revoking probation and the judgment, if any, may be set aside for good cause upon motion made before pronouncement of judgment or, if judgment has been pronounced, within 30 days after the court has notice that execution of the sentence has commenced. If an order setting aside the judgment or the revocation of probation or both is made after the expiration of the probationary period, the court may again place the defendant on probation for such period and with such terms and conditions as it could have done immediately following conviction." (Stats. 1957, ch. 331, § 1, p. 970.) Insignificant changes to these provisions over the years have resulted in section 1203.2, subdivision (e). (Prior law annot., Deering's Ann. Pen. Code, following § 1203.2 (1982 ed.) pp. 4-5 (1994 supp.) p. 6.)

the initial term expired, and the revocation was set aside. (*People* v. *Gish, supra,* 230 Cal.App.2d 544, 546; *People* v. *Carter, supra,* 233 Cal.App.2d 260, 268; *People* v. *Daugherty* (1965) 233 Cal.App.2d 284, 289 [43 Cal.Rptr. 446]; *In re Hamm, supra,* 133 Cal.App.3d 60, 66-67.) *People* v. *Gish, supra,* held that the probation maximum stated in section 1203.1 was applicable only "to the granting of probation in the first instance." (230 Cal.App.2d at p. 546, fn. 1; cf. *In re Hamm, supra,* 133 Cal.App.3d at p. 67.)

We conclude that the trial court's reliance on section 1203.2, subdivision (e), and the above precedent was misplaced for several reasons. In all of the above cases, probation was revoked due to a violation pursuant to section 1203.2[5] before the revocation was set aside and probation reinstated under section 1203.2, subdivision (e). No case has applied subdivision (e) where the trial court has merely modified probation in the absence of a violation due to changed circumstances.

In addition, all the above cases applying section 1203.2, subdivision (e), predate the 1984 addition to section 1203.2, subdivision (a), which provides that probation "shall not be revoked" for any nonwillful inability to pay restitution. We are convinced that when this provision of subdivision (a) applies, subdivision (e) of the same section does not. The 1984 amendment to section 1203.2, subdivision (a), forbidding revocation of probation applies here since defendant was determined to be unable to pay restitution. Before the court set aside the summary revocation of probation, it had determined at a formal revocation hearing that defendant had not violated her probation. Therefore, the necessary predicate for reimposing probation under section 1203.2, subdivision (e), that the court revoke probation and set aside that revocation, is absent.

---

[5]Section 1203.2, subdivision (a), currently provides in pertinent part: "At any time during the probationary period of a person released on probation under the care of a probation officer pursuant to this chapter, or of a person released on conditional sentence or summary probation not under the care of a probation officer, if any probation officer or peace officer has probable cause to believe that the probationer is violating any term or condition of his or her probation or conditional sentence, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the person and bring him or her before the court or the court may, in its discretion, issue a warrant for his or her rearrest. Upon such rearrest, or upon the issuance of a warrant for rearrest the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses. . . ."

Substantially similar provisions were added to section 1203 in 1903 and remained there (Stats. 1903, ch. 34, § 1, p. 35; prior law annot., Deering's Ann. Pen. Code, following § 1203 (1993 ed.) pp. 282-300 (1994 supp.) p. 15) until they were included in section 1203.2 when it was enacted in 1935. (Prior law annot., Deering's Ann. Pen. Code, following § 1203.2 (1982 ed.) pp. 4-5 (1994 supp.) p. 6.)

As *Cookson* stated, the amendment of subdivision (a) of section 1203.2 was intended to prevent imprisonment of probationers who have simply been unable to fully pay restitution. All the court can do is modify and extend probation to the maximum term. If the probationer remains unable to fully pay restitution throughout the maximum term, the trial court lacks authority either to revoke and imprison or to further extend probation and, instead, must discharge defendant from probation pursuant to section 1203.3, subdivision (b).[6]

Our statutory interpretation is consistent with the policies behind section 1203.2, subdivision (e), and the 1984 amendment to section 1203.2, subdivision (a). The policy behind subdivision (e) was to give courts an alternative to imprisoning probationers after expiration of their probationary terms when their dereliction did not warrant it. The policy behind subdivision (a) was to avoid imprisoning probationers who were unable to pay restitution due to circumstances beyond their control.

Our interpretation of subdivisions (a) and (e) of section 1203.2 does not affect the treatment of probationers who are able to pay and willfully do not. If these circumstances appear at the formal revocation hearing, the court is authorized to revoke probation and either order imprisonment or to set aside the revocation and reinstate probation for a new term exceeding the original maximum. Nor does our interpretation of section 1203.2, subdivision (a), preclude summary revocation of probation when a probationer has not fully paid restitution. Summary revocation remains available to preserve the court's jurisdiction when the probation term is about to expire. (Cf. *People* v. *Journey* (1976) 58 Cal.App.3d 24, 27 [129 Cal.Rptr. 478].) Indeed, the Legislature has acknowledged summary revocation in the following amendment to section 1203.2, subdivision (a). "Such revocation, summary or otherwise, shall serve to toll the running of the probationary period." (Stats. 1977, ch. 358, § 1, p. 1330.) The provision precluding revocation for inability to pay was added immediately preceding this provision.

In summary, section 1203.2, subdivision (e), is the only statutory authority for extending probation beyond the initial maximum term. Probation cannot be imposed "again" under that subdivision unless probation is revoked based on a violation of probation and the revocation has been set aside. Since the trial court found that defendant did not violate probation and was unable to pay full restitution, there was no formal revocation and section

---

[6]Quoted in footnote 2, *ante*.

1203.2, subdivision (e), did not authorize extending probation beyond the initial maximum five-year term.[7]

### Disposition

The order reinstating probation is reversed. The trial court is directed to discharge defendant from probation.

Elia, J., and Bamattre-Manoukian, J., concurred.

---

[7]In light of this conclusion, we need not address defendant's equal protection argument.