Filed 10/13/20  P. v. Taylor CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C090108 |
| Plaintiff and Respondent, | (Super. Ct. No. 17CF05962) |
| v. | |
| BURLIN DOUGLAS TAYLOR, | |
| Defendant and Appellant. | |

The trial court revoked defendant Burlin Douglas Taylor's probation after he allowed his global positioning system (GPS) device to stop functioning, failed to update his address with probation, and failed to enroll in a batterer's treatment program. Defendant argues on appeal the trial court abused its discretion when it found he had willfully violated his probation conditions.  We disagree and affirm the judgment.

## I.  BACKGROUND

Defendant pled no contest to one count of corporal injury on a dating partner. (Pen. Code, § 273.5, subd. (a).)  The trial court placed him on a four-year term of

1

probation. Among other conditions of probation, defendant was required to enroll in a batterer's treatment program, keep the probation officer informed of his residential address, and seek approval before changing his residence.

Three months later, defendant admitted three violations of probation involving the use of marijuana and methamphetamine, a failure to appear in court, and a failure to report to probation. The trial court revoked, then reinstated probation with modified terms. The terms included a GPS monitoring condition, which required defendant to "comply with all GPS guidelines including zone restrictions, curfew restrictions, charging requirements and equipment care issues."

Probation officers attempted to conduct a search of defendant's listed residence, but found that he had not lived there for two or three weeks. The next month, probation officers returned to the address, and were again informed that defendant did not live there. That same month, defendant's GPS battery died. Defendant charged it, but it died again three days later. The GPS battery was not charged again after that. Trying to update defendant's address, probation staff called defendant at the number he had given them and found the number connected to the old address they had previously visited; defendant's former roommate told them that defendant no longer lived at that address. A probation officer also determined defendant had not enrolled in a batterer's treatment program.

Defendant admitted three violations of probation, including a failure to notify probation of a change of address, a failure to enroll in a batterer's treatment program, and a failure to charge his GPS. He explained the GPS charger had stopped working and he did not know what to do. Defendant also explained he was unable to pay the down payment for the batterer's treatment program, and the program would not waive its fees. The probation officer noted the probation department had provided defendant with several contact numbers for resolving problems with the GPS device, and defendant had

2

provided an inaccurate residential address on at least three separate occasions. The trial court revoked probation and requested a supplemental probation report.

In the supplemental probation report, defendant explained he did not update his address because he had recently moved into a trailer, but did not have an address where he could park it. He was embarrassed he did not have a stable address, so continued to report his prior address. He stated he did not charge the GPS device because he lost the charging cord when he was moving and did not contact the probation office about it because he "panicked." He also reaffirmed he did not have money to enroll in a batterer's treatment program. The probation officer noted the probation office had previously given defendant five phone numbers he could contact if he had technical problems with the GPS device or charger. Moreover, defendant had met with probation officers several times after he had reportedly lost the charger, but never reported any problems. Defendant and the victim submitted letters to the trial court, explaining they had lost the GPS charger and attempted to contact defendant's probation officer once about it, but had been unsuccessful. The victim volunteered to pay for the lost charger. The victim also volunteered to pay for a batterer's treatment program.

At the sentencing hearing, defense counsel argued defendant had told his probation officer he would be moving, but had not updated his address because many of his possessions were still at the old address. The probation officer noted that in the months defendant had been on probation, he had never been out of custody for more than 30 days without violating a condition of probation. The trial court terminated probation and sentenced defendant to four years in state prison.

## II. DISCUSSION

Defendant contends the evidence is not sufficient to support the trial court's finding he willfully violated the terms of probation because the violations were merely the result of his indigence. Specifically, he did not have a stable address because he could not afford a place to live, did not charge the GPS battery because he did not have

3

access to electricity, and did not enroll in a batterer's treatment program because he could not afford it. We see no abuse of discretion.

"Penal Code section 1203.2, subdivision (a) authorizes a trial court to revoke probation 'if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . .' " (*People v. Jackson* (2005) 134 Cal.App.4th 929, 935.) " 'As the language of [Penal Code] section 1203.2 would suggest, the determination whether to . . . revoke probation is largely discretionary.' [Citation.] '[T]he facts supporting revocation of probation may be proven by a preponderance of the evidence.' [Citation.] However, the evidence must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981-982.)

We review a probation revocation decision using the substantial evidence standard of review and great deference is accorded to the trial court's decision, bearing in mind that " '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.] [¶] 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' [Citation.] 'Many times circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense. [Citation.]' [Citation.] ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . ." ' [Citation.] And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant." (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) "When the record reveals that a defendant's violation of the terms of probation was the result of irresponsible or willful behavior, termination

4

of probation and imposition of a prison sentence is no abuse of discretion." (*People v. Kingston* (2019) 41 Cal.App.5th 272, 278.)

Defendant agreed to abide by all charging requirements for his GPS device and then failed to do so. He first claimed that the charger for the device had stopped working and later admitted he had lost the charger and simply "panicked." He had multiple opportunities to correct the problem by contacting any of the five individuals at the probation office whom he had been instructed to contact, or by raising the issue to his probation officer at one of his normally scheduled visits. On the first day he failed to charge the device, he made one attempt to meet with his probation officer, failed, and never made any other attempts to raise the issue of the charger. In fact, on that same day, a probation officer called defendant and left him a message directing him to contact his probation officer, but defendant did not do so. These facts do not support the contention that defendant's failure to charge the GPS was caused by factors out of his control.

Moreover, defendant acknowledged he did not provide updated addresses to his probation officer. He told his probation officer he would be moving, but then listed his old address as his current address, even after he had moved out from his old address. He did not report his unstable housing situation to his probation officer because he was scared of the officer, although he acknowledged that probation staff were never hostile or disrespectful to him. Defendant's move into a trailer may have made it more difficult to keep his probation officer apprised of his housing situation, but changing addresses without receiving written approval and then furnishing outdated information to his probation officer were willful actions that followed several other willful violations of probation, including the use of marijuana and methamphetamine and failures to appear, all of which were catalogued by the probation office. We conclude the trial court did not abuse its discretion in the revocation decision.

### III. DISPOSITION

The judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
HULL, Acting P. J.

/S/

_____
DUARTE, J.